UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

Civil Action No. 3:26-cv-51-CHB-EBA

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES, et al.                                   DEFENDANTS

_____

**Proposed Brief of the Commonwealth of Kentucky as Amicus Curiae in
Support of Plaintiff's Opposition to Defendants' Motion for Stay**

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

INTEREST OF AMICUS CURIAE AND INTRODUCTION.................................. 1

ARGUMENT .................................................................................................................. 3

I.     Federal law specifies that disputes over Kentucky's SNAP program
       should be heard in a Kentucky federal court............................................ 3

CONCLUSION ............................................................................................................. 8

CERTIFICATE OF SERVICE .................................................................................. 9

# TABLE OF AUTHORITIES

**CASES**

*Baatz v. Columbia Gas Transmission, LLC,*
814 F.3d 785 (6th Cir. 2016) ................................................................................... 8

*Colorado v. Trump,*
823 F. Supp. 3d 1251 (D. Colo. 2026) ................................................................. 6, 7

*Commonwealth ex rel. Hancock v. Paxton,*
516 S.W.2d 865 (Ky. 1974) ................................................................................. 1, 2

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) ............................................................................................... 5

*Loughrin v. United States,*
573 U.S. 351 (2014) ............................................................................................... 6

*Minnesota v. U.S. Dep't of Agric.,*
826 F. Supp. 3d 975 (D. Minn. 2026) .................................................................... 6

*Williams v. Taylor,*
529 U.S. 362 (2000) ............................................................................................... 6

**CONSTITUTIONAL PROVISION**

Ky. Const. § 69 ....................................................................................................... 1

**STATUTES**

7 U.S.C. § 2020 ............................................................................................... 4, 5, 6

42 U.S.C. § 4915 .................................................................................................... 7

Ky. Rev. Stat. § 11.065 .......................................................................................... 1

Ky. Rev. Stat. § 12.210 .......................................................................................... 1

Ky. Rev. Stat. § 15.020 .......................................................................................... 1

## OTHER AUTHORITIES

Randy Alison Aussenberg & Gene Falk, Cong. Rsch. Serv., R42505, *Supplemental Nutrition Assistance Program (SNAP): A Primer on Eligibility and Benefits* 2 (Sept. 29, 2025), https://www.congress.gov/crs-product/R42505............................................. 4, 6

*Demographic Summary – Overview*, Cabinet for Health & Fam. Servs., https://perma.cc/JB7C-YF8J (last visited July 29, 2026)............................................... 2

*Household Summary – Overview*, Cabinet for Health & Fam. Servs., https://perma.cc/9S85-K9MW (last visited July 29, 2026) ......................................... 2

## INTEREST OF AMICUS CURIAE AND INTRODUCTION

When Supplemental Nutrition Assistance Program (SNAP) funds are improperly disbursed, all Kentuckians suffer. Waste, fraud, and abuse take money not only from Kentuckians who depend on SNAP to avoid going hungry, but also from hardworking Kentucky taxpayers who contribute to the program. To protect SNAP recipients and American taxpayers, the U.S. Department of Agriculture (USDA) has exercised its statutory authority to request records from every state's SNAP-administering agency. Governor Andy Beshear and his Secretary of the Cabinet for Health and Family Services (CHFS), however, have repeatedly rebuffed these common-sense requests.

Although the Governor's administration administers SNAP for Kentucky, it does not speak for the Commonwealth in court. Under Kentucky law, the Attorney General is the "chief law officer" of the Commonwealth and has the authority to appear in all proceedings "before all [] courts . . . in which the Commonwealth has an interest." Ky. Rev. Stat. § 15.020(1), (3). To be sure, the Governor is vested with executive power, Ky. Const. § 69, and has the authority to represent the interests of his office and the agencies he supervises in court, Ky. Rev. Stat. §§ 11.065, 12.210(1). But despite CHFS's attempt (at 2) to define Governor Beshear as "Kentucky," only the Attorney General can represent the Commonwealth. *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 868 (Ky. 1974). In doing so, the Attorney General's "primary obligation is

1

to . . . the body politic, rather than to its officers, departments, commissions, or agencies." *Id.*

The body politic's interests here are significant. Every month, 272,506 Kentucky households receive a total of $88,029,122 in SNAP benefits. *Household Summary – Overview*, Cabinet for Health & Fam. Servs., https://perma.cc/9S85-K9MW (last visited July 29, 2026). That means 559,160 individual Kentuckians benefit from the SNAP program, including 227,605 children and 92,446 seniors. *Demographic Summary – Overview*, Cabinet for Health & Fam. Servs., https://perma.cc/JB7C-YF8J (last visited July 29, 2026). The average monthly SNAP issuance of $323 per household serves as a critical safety net to ensure that Kentuckians do not go hungry. *Household Summary – Overview*, *supra*. And every taxpayer supports the system through state and federal taxes and thus has a strong interest in seeing that the SNAP dollars administered by CHFS are going to those in need, not being lost to waste, fraud, and abuse.

CHFS's stay motion presents the question of who should decide this dispute between CHFS and USDA. In its response, USDA ably explained why the answer is this Court. The Commonwealth agrees and respectfully submits this amicus brief to underscore the Commonwealth's interests in protecting Kentuckians' rights to have disputes over SNAP administration heard in Kentucky.

Federal law dictates that SNAP disputes between a state's administering agency and the federal government are heard in that state. Records requests based on state

2

error rates are necessarily fact-dependent inquiries best addressed on a state-by-state basis. Although the Governor somehow prefers that a California federal court decide this issue, federal law directs that this Kentucky dispute be decided here.[1] This Court should deny CHFS's stay motion and hear this dispute between CHFS and USDA.

## ARGUMENT

Federal law is clear that this Court, not a California district court thousands of miles away, is the appropriate forum to hear the Kentucky-specific issues in this case. The anticipatory nature of the Governor's California suit strongly disfavors applying the first-to-file rule.

## I.   Federal law specifies that disputes over Kentucky's SNAP program should be heard in a Kentucky federal court.

SNAP is a comprehensive cooperative-federalism regime under which the federal government generally funds the benefits and shares administrative costs with the states, which determine eligibility and issue benefits. Randy Alison Aussenberg & Gene Falk, Cong. Rsch. Serv., R42505, *Supplemental Nutrition Assistance Program (SNAP):*

---

[1] Although the Governor has sued the Trump administration many times, to the best of the Attorney General's knowledge, the Governor has not sued in Kentucky, but in district courts elsewhere like he has done here. *See, e.g.*, *Illinois v. FEMA*, No. 26-cv-485 (D.R.I. filed July 23, 2026) (conditions on DHS and FEMA funds); *Washington v. U.S. Dep't of Hous. & Urb. Dev.*, No. 26-cv-439 (D.R.I. filed July 7, 2026) (housing funds); *Massachusetts v. Oz*, No. 26-cv-12962 (D. Mass. filed June 29, 2026) (Medicaid rule); *Maryland v. U.S. Dep't of Educ.*, No. 26-cv-1957 (D. Md. filed May 19, 2026) (student loan eligibility); First Amended Complaint, *New York v. Trump*, No. 25-cv-39 (D.R.I. Feb. 13, 2025), ECF No. 114 (federal funding freeze).

3

*A Primer on Eligibility and Benefits* 2 (Sept. 29, 2025), https://www.congress.gov/crs-product/R42505. States have flexibility in tailoring the program to their residents. *Id.* For example, states have different income, employment, and housing requirements, *see generally id.* at 1–15, 19, and differ in their reliance on local governments, *id.* at 2. And as the Governor himself has represented, each state's data systems differ in their "complexities." Dkt. 1-21 at 2 (States' Letter Responding to USDA's May 15 Request).

The intricacies of this scheme are evident in Congress's provisions for resolving federal-state disputes regarding SNAP. Congress provided that upon a state agency's failure to correct noncompliance with the SNAP statute, the United States can request "injunctive relief . . . in an appropriate district court of the United States having jurisdiction of the geographic area *in which the State agency is located.*" 7 U.S.C. § 2020(g) (emphasis added). That is to say, if the United States wants to sue a state agency about SNAP compliance, the federal government must come to the state's home federal court.

This forum requirement is critical to the overall statutory scheme. Because the federal government and the states share responsibility in SNAP's operations, the system works only when both levels of government play their congressionally assigned roles. When a state fails to police waste, fraud, and abuse—or obstructs federal oversight, as here—this system is threatened. Although Section 2020(g) empowers the federal government to ensure state compliance with federal law, it also protects the states in two respects. *First*, it requires the federal government to inform state agencies of alleged

4

violations and allow them to rectify these errors before facing enforcement actions. 7 U.S.C. § 2020(g). *Second*, it ensures that enforcement actions are heard in local fora sensitive to each state's unique SNAP administration procedures. *Id.*

CHFS's stay motion asks this Court to approve of the Governor's evasion of this carefully crafted scheme by filing a preemptive, foreign lawsuit. Granting a stay would override the plain meaning of Section 2020(g), under which this Court is indisputably the "appropriate district court" with "jurisdiction of the geographic area in which [CHFS] is located."

A stay would also undermine the statutory scheme. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must [] interpret the statute 'as a symmetrical and coherent regulatory scheme' . . . and 'fit, if possible, all parts into an harmonious whole.'"). As discussed above, Section 2020(g) requires USDA to "immediately inform" a state agency noncompliant with the statute's requirements and provide "a specified period of time for the correction of such failure." Only if the agency "does not correct such failure within that specified period" can the United States request injunctive relief from the appropriately located district court. *Id.*

Granting CHFS's stay motion would allow state agencies that have received notices of failure to immediately bring pre-enforcement challenges in foreign courts, then stay enforcement proceedings brought later in statutorily specified courts. Such actions would nullify Section 2020(g)'s forum requirement. But it is a "'cardinal

principle' of interpretation that courts 'must give effect, if possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

Ensuring that a state's federal court hears allegations of noncompliance regarding that state's SNAP administration has real benefits. Consider recent litigation over Section 2020(g) in other states. In Minnesota, a district court found that several counties' declarations about the practical impossibility of complying with USDA's in-person interview demands were material to the dispute. *Minnesota v. U.S. Dep't of Agric.*, 826 F. Supp. 3d 975, 991, 1003 (D. Minn. 2026). And in Colorado, a key part of USDA's argument involved that state's administration of SNAP via county programs. *See Colorado v. Trump*, 823 F. Supp. 3d 1251, 1275 (D. Colo. 2026); *see also id.* at 1261–62 (detailing Colorado's pilot projects and "robust systems to prevent waste, fraud, and abuse"); *id.* at 1274 (emphasizing "the enormous practical challenges involved").

Disputes like the instant case thus hinge on fact-specific inquiries about how each state agency uniquely administers SNAP—whether that be in its eligibility requirements, delegations of authority to political subdivisions, or administrative realities. *See generally* Aussenberg & Falk, *supra*. For example, the logistics of implementing federal requirements may be relevant to a state agency's noncompliance. *See Minnesota*, 826 F. Supp. 3d at 1003; *Colorado*, 823 F. Supp. 3d at 1274; *see also* 7 U.S.C. § 2020(g) (allowing injunctive relief only upon "failure . . . without good cause"). In

such a case, a federal district court may benefit from insights by state or local officials about the practicality of complying with federal regulations—in addition to general background on unique aspects of that state's SNAP regime. The SNAP statute provides geographic convenience for these officials.

Furthermore, Kentucky SNAP recipients have a strong interest in litigation over the administration of their own benefits. *Accord Colorado*, 823 F. Supp. 3d at 1274–75 (emphasizing the "serious reliance interests" of SNAP recipients in the context of an Administrative Procedure Act challenge). The SNAP statute ensures that local beneficiaries of the SNAP program can readily observe such proceedings, if they wish.

Section 2020(g)'s forum requirement also ensures that Kentucky SNAP recipients and agencies will have disputes heard by a judge who lives in and thus understands the Commonwealth. In this respect, Section 2020(g) contrasts with federal statutes specifying a District of Columbia court as the exclusive forum for litigation with federal agencies. *See, e.g.*, 42 U.S.C. § 4915(a) (challenges to certain EPA and FAA regulations must be filed in the D.C. Circuit). This Court should honor Congress's deliberate choice of a Kentucky federal court as the appropriate forum for this dispute.

Tellingly, CHFS's stay motion nowhere mentions the statutory requirement that SNAP administration violations be heard in this Court, much less grapples with the critical state interests this requirement safeguards. Instead, CHFS accuses the United States of "attempt[ing] to forum shop." Stay.Mot. at 1. But the United States merely

7

followed the federal statutory forum requirement. In contrast, the Governor "took the unusual step of filing a motion in the California court to enjoin the United States from litigating this enforcement action . . . in Kentucky." Stay.Opp. at 1.

Indeed, the Governor's filing of an anticipatory suit in California weighs against applying the first-to-file rule discussed in CHFS's stay motion. Stay.Mot. at 4–6; *see Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789, 792 (6th Cir. 2016) (explaining that when a party rushes to "a preferred forum" to file "an anticipatory suit," the first-to-file rule may not be "merit[ed]").

This Court should follow the text and structure of Section 2020(g) and decline to reward the Governor for evading this Court and seeking relief in California.

## CONCLUSION

For the foregoing reasons, the Commonwealth of Kentucky respectfully urges this Court to deny CHFS's stay motion.

Respectfully Submitted,

**Russell Coleman**
Attorney General of Kentucky

/s/ *John H. Heyburn*
MATTHEW F. KUHN (KBA No. 94241)
  *Solicitor General*
JOHN H. HEYBURN (KBA No. 100756)
  *Principal Deputy Solicitor General*

Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601-8204
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov

*Counsel for the Commonwealth of Kentucky*

8

## CERTIFICATE OF SERVICE

I certify that on July 29, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Kentucky using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ John H. Heyburn*